# No. 25-10154

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

CHARLES S. WEEMS, IV, KERRI WEEMS, CELEBRATION GLOBAL, INC., HONEY LAKE
FARMS, INC., NORTHSTREAM MANAGEMENT GROUP, LLC AND WEEMS GROUP, LLC

*Plaintiffs-Appellants,*

vs.

ASSOCIATION OF RELATED CHURCHES, CHRIS HODGES AND DINO RIZZO,

*Defendants-Appellees.*

On Appeal From The United States District Court For The Middle District Of
Florida, The Hon. Marcia Morales Howard, District Judge
Case No. 3:3-Cv-811-Mmh-Lll

## APPELLANTS' OPENING BRIEF

JOHN C. CLOUGH (Bar No: 0184391)
BUCHALTER
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400

*Attorneys for Plaintiffs and Appellants*
Charles S. Weems, IV, Kerri Weems, Celebration Global,
Inc., Honey Lake Farms, Inc., NorthStream Management
Group, LLC and Weems Group, LLC

## CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE

## STATEMENT UNDER FRAP 26.1(a)

Plaintiffs and appellants disclose the following:

Their certificate of interested parties and corporate disclosure statement filed in this appeal as ECF 8 is correct.

Plaintiffs only add their new counsel, not listed in that filing here:

John Clough, counsel for each and all of the plaintiffs and appellants:

Charles Stovall Weems, IV, Kerri Weems, Celebration Global, Inc. Hone Lake Farms, Inc., NorthStream Management Group, LLP and Weems Group, LLC.

DATED: July 16, 2025                    BUCHALTER

By: _____
         JOHN C. CLOUGH

*Attorneys for Plaintiffs and Appellants*
Charles S. Weems, IV, Kerri Weems, Celebration Global, Inc., Honey Lake Farms, Inc., NorthStream Management Group, LLC and Weems Group, LLC

BN 91488460v3

## STATEMENT CONCERNING ORAL ARGUMENT (11TH Cir. Rule 28-1(c))

Plaintiffs and appellants request oral argument in this case. As discussed in detail in this brief, the case law on which the district court and the defendants principally relied all involved litigation between church members/ministers and their churches – interchurch disputes. This case, as even the district court acknowledged, is not such a case. It presents a question not squarely addressed in prior case law and merits fuller consideration, as well as argument.

Plaintiffs and appellants believe that oral argument will assist in addressing the nuances raised by the fact pattern here.

DATED: July 16, 2025

BUCHALTER

By: _____
        JOHN C. CLOUGH

*Attorneys for Plaintiffs and Appellants*
Charles S. Weems, IV, Kerri Weems, Celebration Global, Inc., Honey Lake Farms, Inc., NorthStream Management Group, LLC, and Weems Group, LLC

BN 91488460v3

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..........................................................................9

II.   JURISDICTIONAL STATEMENT ..........................................10

III.  TIMELINESS OF APPEAL ....................................................11

IV.   STATEMENT OF ISSUES PRESENTED FOR REVIEW ........12

V.    STATEMENT OF THE CASE ................................................13

    A.    The first amended complaint pleads that church outsiders wrongfully interfered with the plaintiffs' business relationships, also with Church outsiders. ...............................................13

    B.    Procedural History leading to the district court's dismissal order. ......20

    C.    The district court dismisses the amended complaint based on ecclesiastical abstention. ..................................................21

VI.   SUMMARY OF ARGUMENT ................................................25

VII.  ARGUMENT..........................................................................27

    A.    Standard of Review..........................................................27

    B.    The district court erred in finding that ecclesiastical abstention barred the first amended complaint. ...................................27

        1.    The ecclesiastical abstention doctrine is not unlimited, and is generally limited to intra- not extra-church disputes. ...........27

        2.    Claims relating to wrongful conduct occurring after a member/pastor's withdrawal from a church do not fall within ecclesiastical abstention. ...............................................30

        3.    Even where a lawsuit might conceivably intrude on church autonomy, the case may proceed if the courts can apply neutral principles of law to the dispute....................................32

        4.    The district court erred in applying the above principles. ........35

C.    Following reversal of the district court's order dismissing the action, this Court should reverse wth instructions for the district court to consider, in the first instance, defendants Rule 12(b)(6) challenge to the interference and conspiracy claims by the Weems Group and NorthStream in the first amended complaint, and if having any merit, to determine if leave to amend should be granted. ............................................................................38

VIII.  CONCLUSION ............................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Baumann v. Savers Fed. Sav. & Loan Ass'n,*
  934 F.2d 1506 (11th Cir. 1991)........................................................................39

*Crowder v. Southern Baptist Convention,*
  828 F.2d 718 (11th Cir. 1987)....................................................................27, 33

*Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Fla.,*
  824 F.App'x 680 (11th Cir. 2020)....................................................................33

*Garcia v. Church of Scientology Flag Serv. Org., Inc.,*
  No. 18-13452, 2021 WL 5074465 (11th Cir. Nov. 2, 2021).............................27

*General Council on Fin. & Admin. v. California Superior Court,*
  439 U.S. 1355 (1978)............................................................................28, 29, 33

*Hutchison v. Thomas,*
  789 F.2d 392 (6th Cir. 1986)...........................................................................34

*Jones v. Wolf,*
  443 U.S. 595 (1972)..................................................................................28, 33

*Lawrence v. Dunbar,*
  919 F.2d 1525 (11th Cir. 1990)........................................................................27

*McClure v. Salvation Army,*
  460 F.2d 553 (5th Cir. 1972)...........................................................................34

*MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.,*
  40 F.4th 1295 (11th Cir. 2022)........................................................................39

*Myrhe v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y,*
  719 F.App'x 926 (11th Cir. 2008)....................................................................32

*Nicholson v. Shafe,*
  558 F.3d 1266 (11th Cir. 2009)........................................................................39

*Orthodox Diocese for U.S. of Am & Canada v. Milvojevich*,
　426 U.S. 696 (1976)..........................................................................33

*Rutland v. Nelson*,
　857 F.App'x 627 (11th Cir. 2021)....................................................33

*Sonnier v. Roman Cath. Diocese of Lafayette*,
　No. 6:16-CV-1229, 2017 WL 778153 (W.D.La. Jan. 18, 2017).......31

*United States v. Iguaran*,
　821 F.3d 1335 (11th Cir. 2016)........................................................27

**State Cases**

*Auguste v. Hyacinthe*,
　346 So.3d 67 (Fla.Dist.Ct.App. 2022)........................................31, 32

*Bilbrey v. Myers*,
　91 So.3d 887 (Fla.Dist.Ct.App. 2012)..............................................30

*Favalora v. Sidaway*,
　995 So.2d 1133 (Fla.Dist.Ct.App. 2008)......................................35, 36

*Flynn v. Estevez*,
　221 So. 3d 1241 (Fla.Dist.Ct.App. 2017)..........................................31

*Goodman v. Temple Shir Ami, Inc.*,
　712 So.2d 775 (Fla.Dist.Ct.App. 1998)..............................................33

*Gorman v. Swaggart*,
　524 So.2d 915 (La.Ct.App. 1988)................................................30, 31

*Guinn v. Church of Christ of Collinsville*,
　1989 OK 8, 775 P.2d 766 (1989)......................................................31

*Malicki v. Doe*,
　814 So.2d 347 (Fla. 2002)............................................................28, 29

*Mammon v. SCI Funeral Servs. of Fla. Inc.*,
　193 So.3d 980 (Fla.Dist.Ct.App. 2016)........................................34, 35

*Napolitano v. St. Joseph Cath. Church*,
　308 So.3d 274 (Fla.Dist.Ct.App. 2020)..............................................34

BN 91488460v3

*Oklahoma Ann. Conf. of the United Methodist Church, Inc. v. Timmons*,
    2023 OK 101, 538 P.3d 163 (OK 2023) .............................................................31

*St. Brendan High Sch., Inc. v. Neff*,
    283 So.3d 399 (Fla. Dist.Ct.App. 2019) ....................................................29, 30

**Federal Statutes**

28 U.S.C. § 1332.................................................................................................11

**State Statutes**

Fla. Stat. § 617.0834 ...............................................................................16, 36, 37

**Rules**

Fed.R.Civ.P. 12........................................................................................21, 27, 38

BN 91488460v3

# I.  INTRODUCTION

The unique fact pattern addressed in this action presents an issue not squarely addressed by existing case law concerning ecclesiastical abstention.

Plaintiffs Charles Stovall Weems and Kerry Weems,[1] along with plaintiffs Celebration Global, Inc., Honey Lake Farms, Inc., NorthStream Management Group, LLC, and the Weems Group sued defendants Association of Related Churches (ARC), Chris Hodges and Dino Rizzo for the latters' interference with advantageous business relationships between the plaintiffs and third parties – relationships that damaged and risked the defendants' own financial interests if they continued.  So the defendants successfully acted to scuttle those relationships.[2] Defendants' mode of interference:  manufacturing evidence for a sham investigation against Stovall urging that he committed financial improprieties under Florida law so that the third parties in business with Stovall and his entities would terminate those relationships.  The strategy worked.

Defendants seek to avoid all liability, claiming that the courts lack jurisdiction to hold them accountable for their actions on grounds of ecclesiastical

---

[1] Charles S. Weems (the "S" stands for Stovall) and Kerri Weems are married.  To avoid confusion, this brief will refer to them by first name (Stovall and Kerri, respectively) for ease.  No disrespect is intended.  The Weems Group. LLC will be referred to as Weems Group.

[2] The complaint alleges both interference and conspiracy claims, but for ease of reference, the claims will be referred to as interference claims collectively, unless context indicates otherwise.

abstention because Stovall had previously been pastor of a Church to which none of the parties in this action belonged, and he resigned his position in that Church while the investigation was pending and before any report of alleged financial improprieties came out.

As set forth below, the district court erred in finding that ecclesiastical abstention applies here because (as all acknowledge) this is not an intrachurch dispute and the parties are none of them members of the same church. Further, the complaint asserts no claims against Stovall's former Church from which he resigned, nor any damages from that Church. It was the defendants' use of a manufactured investigation to make "disclosures" to third parties claiming that Stovall allegedly engaged in financial improprieties actionable under general state laws that interfered with plaintiffs' relationships.

None of the cases the district court or the defendants (ARC, Hodges or Rizzo) relied on involve facts similar to those alleged here. The district court misapplied the ecclesiastical abstention doctrine to dismiss plaintiffs' claims. This court should reverse, finding that ecclesiastical abstention does not apply here, and remand the case back to the district court.

## II.  <u>JURISDICTIONAL STATEMENT</u>

The individual plaintiffs (Stovall and Kerri) are both residents of Florida and the plaintiff entities (Celebration Global, Honey Lake, NorthStream, AWKNG and Weems Group) were all formally established, and have their principal place of

business, in Florida. (2-APP-286, 287: FAC, ¶ ¶ 2-7.)[3]

The individual defendants (Hodges and Rizzo) are residents of Alabama, and defendant Association of Related Churches is a Texas Corporation with its principal place of business in Alabama. (2-APP-287: FAC, ¶ ¶ 8-10.)

The amount in controversy in this action is alleged to be in excess of $75,000. (2-APP-286, 287: FAC, ¶ ¶ 1, 13.) This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

The appellees moved to dismiss the action on grounds that the district court lacked subject matter jurisdiction under the ecclesiastical abstention doctrine. That issue will be briefed below in the merits portion of the brief.

## III.  TIMELINESS OF APPEAL

The district court issued its order dismissing the action on subject matter jurisdiction grounds (ecclesiastical abstention) on December 19, 2024. (2-APP-363-276: ECF 58.) Plaintiffs filed their notice of appeal timely within 30 days on January 16, 2025. (2-APP-378-395: ECF 60.)

---

[3] References to documents in the appendix (which excludes law and motion memoranda per the Court's rules), will be as follows:  [Vol. #]-APP-, followed by the APP page number (bottom-right of the appendixes).  Where applicable, the ECF reference will also be included.  Reference to ECF page numbers will be to the ECF electronic numbering.

# IV. STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Stovall was formerly pastor at Celebration Church, but he resigned in April, 2022. The entity plaintiffs/appellees (Celebration Global, Honey Lake, NorthStream, AWKNG and Weems Group) are not members of the Church. The individual defendants are not affiliated with that Church, and defendant ARC is a nondenominational church-planting organization unaffiliated with Celebration Church. This dispute does not arise between a pastor or member of Celebration Church and the Church itself. It does not seek any remedies against the Church, or seek Stovall's reinstatement.

    a. Reviewing the matter de novo, did the district court err in finding that the claims asserted by the plaintiffs involved the Church's internal church processes, canon law or polity as between parties who are not members of the Church? Yes.

    b. Reviewing the matter de novo, did the district court err in finding that the plaintiffs' interference- and conspiracy- based claims could not be decided on neutral principles of law? Yes.

2. The district court did not address that portion of the defendants' motion to dismiss that the claims by the Weems Group and NorthStream in counts 10, 11, 12, 13, 14, 15, 19 and 20 in the first amended complaint were not sufficiently pleaded under Fed.R.Civ.P. 12(b)(6). The district court denied the motion on grounds it was moot. Since the district court never addressed this issue

in the first instance, and since it was raised for the first time only as against the first amended complaint, should this Court remand to determine both the contentions raised in the 12(b)(6) portion of the motion and whether leave to amend should be granted?  Yes.

## V.    STATEMENT OF THE CASE

### A.    The first amended complaint pleads that church outsiders wrongfully interfered with the plaintiffs' business relationships, also with Church outsiders.

Stovall and his wife Kerri founded and operated non-party Celebration Church for 23 years. (2-APP-291: FAC, ¶¶ 23-24.)  In 2018, Stovall (then pastor of the Church) embarked on efforts to change the Church's focus to missionary work, and in the process created five entities. (2-APP-291-293: FAC, ¶¶ 25-29) These were:

Celebration Global, to operate as an umbrella organization under which all missionary work would operate; Honey Lake, to fund and develop, among other things, a retreat and outpatient facility for pastoral care; NorthStream, to operate portfolios for socially- and environmentally-conscious investments, the first of which involved Honey Lake.  These investment portfolios were known as "restorative community developments" or RCDs; AWKNG, to serve as the hub for restorative/ministry programming, and for a theology school, missionary partnerships, media operations and the like; and the Weems Group, a vehicle to allow Stovall, Kerri and their family members to invest in the missionary plan.  (2-

APP-292-293: FAC, ¶¶ 28-29.)

ARC is a cooperative of independent churches *of which Celebration Church was not a member*. ARC is not a denominational church; rather it "plants" (or helps launch) churches by providing initial establishment loans. In addition to their obligations to repay the ARC loans, these planted churches are obligated to tithe money to ARC – 10% until the loans are repaid, and 2% thereafter. (2-APP-293-295: FAC, ¶¶ 31-37.)

The individual defendants *are not Celebration Church members or leaders*. Rather, Hodges is a co-founder and senior pastor at a different church, Church of the Highlands; Rizzo is an associate pastor there. (2-APP-295, 296: FAC, ¶¶ 39, 45.)

Hodges founded, controls and benefits financially from several entities affiliated with ARC and the Highlands Church. He also maintains non-ecclesiastical control and oversight over churches affiliated with ARC. (2-APP-295-296: FAC, ¶¶ 40-44.)

Rizzo is ARC's executive director, and like Hodges, has considerable influence in every ARC church. He carries out Hodges' directives and has the ability to direct and restrict ARC's resources to ARC-planted churches, their programs, and their missions. (2-APP-296: FAC, ¶ 45.)

The Weems' missionary vision, first implemented in 2019, was antithetical to, or conflicted with, ARC's business model as the latter was not missionary-

based, but rather garnered its success by providing loans and receiving repayments both of those loans and through perpetual tithing. (2-APP-293-295, 297-298: *cf.* FAC, ¶¶ 31-37 with ¶¶ 51-52.) Further, as long as Celebration Church implemented a missionary model and ARC did not earmark funds for missionary work, Celebration Church would cease its donations to ARC. (2-APP-294. 297-298: FAC, ¶¶ 35-36, 51-52.) Hodges and Rizzo understood this would threaten their financial interests. (2-APP-299: FAC, ¶¶ 56-59.)

So Hodges, Rizzo and ARC engaged in a campaign to discredit Stovall, which had the effect of destroying business relationships *between the various plaintiffs and third parties*, causing damages, including:

The defendants enlisted the services of Kevin Cormier and Lisa Stewart (both with Celebration Church at the time) to manufacture sham evidence of financial crimes allegedly committed by Stovall. (2-APP-299, 300: FAC, ¶¶ 58, 64.)

The Church did not itself conduct the investigation, but hired outside lawyers (not laity and without any canonical expertise of any kind) to conduct the investigation. (1-APP-17, 19: ECF 1-1 (Report created by outside counsel, the basis of which counsel claimed was entirely privileged).)

The defendants ensured that the attorneys leading the investigation fell in line to make the necessary financial findings. (2-APP-295-296, 305-306: FAC ¶¶ 42-44, 82-83.) As set forth below, Nelson Mullins (the authoring law firm)

BN 91488460v3

issued a Report finding that Stovall allegedly committed financial improprieties which, by counsel's description, relied on Florida general laws as their basis. (1-APP-29-36: ECF 1-1, pp. 14-21/23.)[4]

As a result of the investigation and *before* the Report was published, Stovall tendered his resignation from Celebration Church. (2-APP-309: FAC, ¶¶ 92-93.)

Despite his resignation from the Church, the Report publically issued, purporting to assess that Stovall had engaged in financial improprieties. (2-APP-309, 310: FAC, ¶¶ 93, 95; 1-APP-29-36: ECF 1-1.)

The Report noted that Celebration Church is a board-led church with duties and responsibilities generally associated with and exercised by governing boards. (1-APP-20: ECF 1-1, p. 5/23.) Before making its findings concerning any misconduct, the attorney-drafted Report noted that the church's senior pastor has statutory fiduciary duties to the church as set forth in Fla. Stat. § 617.0834(1). (1-APP-21: ECF 1-1, p. 6/23). It stated that the pastor is subject to oversight and management by the board *in matters of corporate governance* and by the overseers in spiritual matters. (1-APP-21: *Id*.) There are three grounds for discipline: immoral conduct, improper financial practices or espousing improper theological beliefs. (1-APP-21: *Id*.) According to the Report, the investigation was initiated by three trustees (including Cormier) specifically for alleged *improper financial*

---

[4] The "/" symbol here means "out of", as in pages 14-21 out of 23.

BN 91488460v3

*practices.* (1-APP-22: ECF 1-1, p. 7/23)

Plaintiffs do not concede the truth of the Report's findings, but describe them here to show that they involve what courts and litigants commonly understand as "garden variety" misconduct not tied to any faith or cannon.

The Church's ultimate finding was that Stovall had "engaged in a series of improper and unauthorized financial transactions through which he personally benefitted, either directly or indirectly, at the expense of the Church. Weems failed to present these transactions to the Board for its review and approval, ***which he was required to do pursuant to Florida law*** and the Church's governing documents." (1-APP-21: ECF 1-1, p. 7/23 [emphasis added].)

These included selling property to the Church for more than its appraised value and for more than the Weems had purchased the property; making alleged misrepresentations to a bank so the latter would advance money under the Church's line of credit; spending Paycheck Protection Program (PPP) loans on items not authorized by the PPP program; as well as mischaracterizing and cancelling debts, among other things. (1-APP-29-36: ECF 1-1, pp. 14-21/23.)  As noted above, the Report was conducted by attorneys (Nelson Mullins), not by any laity of the Church and not by the Church's overseers.  (1-APP-17, 19: ECF 1-1, pp. 2 and 4/24.) While the Report claimed an extensive analysis of thousands of pages of alleged documents and twenty interviews, the entire investigation was "confidential and privileged under the attorney-client and work product doctrine,

and contains nothing that would allow a reader to determine the identity of witnesses." (1-APP-4: ECF 1-1, p. 4/23.)

Before and after the Report issued, defendants publically contacted outsiders: third parties, leaders of other churches, and contracting/business partners of the various plaintiffs. Defendants advised these third parties that Stovall was being investigated for financial misconduct and would be or was found responsible for same; as a result, plaintiffs lost a number of advantageous business relationships. (2-APP-304, 305, 310: FAC, ¶¶ 78, 80, 98.)

More specifically, the plaintiffs lost the following business relationships of which the defendants were aware (2-APP-302-304: FAC, ¶¶ 70-79):

● a business relationship between Honey Lake Farms and Greg Surratt pursuant to which the two would partner to expand pastoral health retreats by hosting them at Honey Lake's lodge and at Surratt's lodge. Plaintiffs estimate this would have generated $1.5 million over a twenty-four month period for Honey Lake and for AWKNG. (2-APP-302: FAC, ¶¶ 70-71.)

● a prospective arrangement between Honey Lake and Duck Dynasty's Willy Robertson concerning the latter's investment in one of Honey Lake's restorative community development investments. (2-APP-302-303: FAC, ¶ 72.)

● Wildwood Ranch's commitment to make a $1 million investment in Honey Lake to acquire land to build a ranch for troubled teens. (2-APP-303: FAC, ¶ 73.)

●NorthStream entered into an advantageous with the City of Greenville relating to a restorative community development investment. (2-APP-303: FAC, ¶¶ 74-76.)

● a further advantageous relationship between Honey Lake and David Maura. (2-APP-303-304: FAC, ¶¶ 74-76.)

The defendants' scheme also caused Celebration Church to end its contracts with the Weemses, including the pastor agreements, and the financial support package for Celebration Global, which in turn would have assisted funding with Honey Lake, NorthStream and AWKNG. (2-APP-298, 304: FAC, ¶¶ 53-55, 76, 79.)

The first amended complaint then alleges distinct claims for interference with advantageous contractual and business relationships by various plaintiffs against various defendants:

Stovall and Kerri each allege separate claims against ARC, Hodges and Rizzo for interference with the pastor agreements. (2-APP-312-316: ECF 49, Counts 1 through 3.)

Celebration Global likewise alleges distinct claims against ARC, Hodges and Rizzo for interference with the investment compensation package to Celebration Global. (2-APP-317-320: ECF 49, Counts 4-6.)

Honey Lake sued each of the defendants for interference with its relationships with Surratt, Robertson, Wildwood Ranch and Maura. (2-APP-320-

325: ECF 49, Counts 7-9.)

NorthStream sued each of the defendants for interference with its relationships with Honey Lake and Honey Lakes Clinic, as well as with AWKNG. (2-APP-325-328: ECF 49, Counts 10-12.)

Weems Group sued each of the defendants for interference with its relationship with NorthStream. (2-APP-329-333: ECF 49, Counts 13-15)

In separate counts, each of the plaintiffs – the Weemses, Celebration Global, Honey Lake, NorthStream and the Weems Group – sued Hodges and Rizzo for conspiracy in counts 14 through 20, respectively (2-APP-333-341.)

## B. Procedural History leading to the district court's dismissal order.

The plaintiffs as well as defendants filed notices of related cases, advising the court that there were related actions pending in the Florida state courts between Stovall and Celebration Church. They did not involve the defendants in this action; nor did anyone claim that they did. (1-APP-40-45: ECFs 7 and 22.)

Following defendants' filing of a motion to dismiss the original complaint (1-APP-10: Docket at ECF 29), plaintiffs filed the amended complaint, described above. (1-APP-11: Docket at ECF 49.)

The defendants again moved to dismiss. They sought dismissal on alternative grounds: (1) for lack of subject matter jurisdiction under the ecclesiastical abstention doctrine, or (b) because the interference claims and conspiracy claims alleged by the Weems Group and by NorthStream against the

-20-

defendants were insufficiently pled under Federal Rule of Civil Procedure 12(b)(6). (2-APP-360-361: ECF 52, pp. 359-360.)

### C. The district court dismisses the amended complaint based on ecclesiastical abstention.

Following briefing (1-APP-12: Docket at ECF 52, 56, 57), the district court issued its order granting the motion to dismiss the first amended complaint only on grounds that it lacked subject matter jurisdiction pursuant to ecclesiastical abstention. (2-APP-364-377: ECF 58.)

The district court recited the facts concerning non-party Celebration Church's founding by Stovall and Kerri, describing Mr. Weems as "Pastor," even though he had resigned the Church before the action was filed. (2-APP-365: ECF 58, pp. 2.) It acknowledged the formation of the plaintiff entity parties. (2-APP-365-366: ECF 58, p. 2-3.)

The district court's order noted the allegations concerning defendants ARC, Hodges and Rizzo, and acknowledged all of the following: that the defendants felt that the plaintiffs' change to missionary-focused work was a threat to defendants' interests and that the defendants had agreed to engage in a continuing course of conduct to oust Stovall from the Church and destroy the missionary plan, a scheme that worked based on evidence manufactured by defendants. (2-APP-367: ECF 58, pp. 4.)

The court likewise accepted the allegations that defendants used the

investigation they conspired to start as an opportunity to destroy plaintiffs' strategic partnerships, contacting outside third parties and advising that Stovall was being investigated for financial misconduct and would be removed from Celebration Church. (2-APP-367-368: ECF 58, pp. 4-5.)

The court also recited allegations that Stovall resigned the Church and only thereafter, did the Report allegedly assessing financial improprieties issue. (2-APP-368-369: ECF 58, pp. 5-6.) The court considered the Report under the incorporation by reference doctrine. (2-APP-369: ECF 58, p. 6, fn. 5.)

The Report was 24 pages long and (as described above at Section IV, *ante*) addressed alleged financial improprieties at length;[5] however the district court referred only to two pages with passing reference to "unbibilical" leadership and "spiritual" abuse without any acknowledgement that the ultimate finding related to alleged financial improprieties. The district court also did not consider the fact that the Report was issued by lawyers under Florida general corporate laws and principles. (2-APP-369: ECF 58.)

The order did not address or consider the various business relationships alleged in the amended complaint, defendants' knowledge of those relationships, their interference with those relationships or damages suffered by the plaintiffs, appearing to accept them as true. (2-APP-364-237: ECF 58, pp. 1-6.) It addressed

---

[5] (1-APP-29-36: ECF 1-1, pp. 14-21/23.)

only the defendants' argument that the court lacked jurisdiction to consider the claims at all based on ecclesiastical abstention. (2-APP-369-377: ECF 58, pp. 6-14.)

After reciting the ecclesiastical abstention doctrine as the court understood it, the district court found that each claim depended on Stovall's ouster being illegitimate because it was based on a sham investigation orchestrated by the defendants. (2-APP-371-372: ECF 58, p. 8-9)

The court rejected plaintiffs argument that the claims *were not governed by religious doctrine, custom or tradition*, or that they *only involved secular* rather than canonical law because the investigation resulted in the ouster of a pastor (without reference to the fact that the pastor had already resigned). (2-APP-374: ECF 58, p. 11.)

Albeit in mixed reasoning, the district court appeared to adopt defendants' arguments, reasoning that it would have to ask whether the investigation was undertaken based on reasonable concerns about Stovall's leadership or because of defendants' machinations, and whether Stovall's ouster was based on Stovall's failure to live up to "biblical standards for leadership" or whether he was just set up, citing to arguments made in defendants' motion. (2-APP-374: ECF, 58, p. 11.)

On the other hand, the court did not find, as defendants urged, that plaintiffs' claims impermissibly seek resolution of matters involving church polity. (2-APP-374-375: ECF, pp. 11-12.) The district court held that plaintiffs were correct that

-23-

the case does not involve opposing factions of members of the same congregation, that the Church was not a party, and further that the parties on either side of the dispute are not part of the same church body. (2-APP-374: ECF 58, p. 11.)

Ultimately, the court found it would have to inquire into whether those within Celebration Church acted out of legitimate concerns about Stovall's fitness for pastoral obligations, or because of the defendants' tortious conduct. (2-APP-374: ECF 58, p. 11.)  Thus, the court found that even though plaintiffs had framed their claims in such a way that there was no direct dispute between church bodies, resolution of the claims would have to inquire into the Church's internal decision to investigate Stovall.  This inquiry, it found, was barred by the ecclesiastical abstention doctrine. (2-APP-375: ECF 58, p. 12.)

Next, the district court rejected plaintiffs' argument that even if the claims might implicate ecclesiastical concerns, abstention would not be required because the court could determine defendants' liability under neutral principles of tort law. Again, the court held that the central dispute was whether Celebration Church initiated its investigation for legitimate reasons, or whether the investigation was a sham orchestrated by defendants' tortious conduct, and this necessarily involved questions of church doctrine and polity. (2-APP-376: ECF 58, p. 13.)

Last, in a footnote, the district court rejected plaintiffs' argument that there is an exception for cases involving fraud or collusion where church tribunals act in bad faith for secular purposes.  Even if such an exception existed, the court found

-24-

the exemption inapplicable. The court acknowledged that the allegations raise a reasonable inference that defendants had a secular motive for their conduct, but it did not allege that Celebration Church had such a motive. (2-APP-376: ECF 58, p. 13, fn. 8.)

The court granted the motion to dismiss, directed the clerk to close the file and terminate any pending motions as moot (including that part of the motion to dismiss the NorthStream and Weems Group counts for interference and conspiracy). (2-APP-376-377: ECF 58, p. 13, including fn. 9 and p.14)

This appeal follows. (2-APP-379-395: ECF 60.)

## VI. <u>SUMMARY OF ARGUMENT</u>

The question implicated by this appeal is the nature, extent and scope of ecclesiastical abstention under the facts of this case.

Defendants' motion to dismiss on those grounds is a facial challenge to the first amended complaint relying only on the allegations of the complaint and documents incorporated in the complaint. Thus, as set forth below, defendants' challenge is a facial challenge, meaning it is one that takes the factual allegations of the complaint as true.

Thus, admitting the allegation in the complaint that this action *does not* involve an intrachurch challenge (between a church's members or their laity), *does not even involve* a dispute between members of the same church, does not request or seek Stovall's reinstatement in Celebration Church and or any damages from

-25-

Celebration Church, defendants claim that plaintiffs cannot sue them for their interference with plaintiffs' relationships with third parties, also unaffiliated with Celebration Church.

These facts defeat any claim that the ecclesiastical abstention doctrine applies here. Any judgment in this case will not affect Celebration Church, and will not require it to reinstate Stovall (and could not do so in light of the scope of the claims). The action will only assess damages against non-affiliated defendants ARC, Hodges and Rizzo. Those damages will be assess because the defendants manufactured evidence of financial improprieties for a sham investigation so defendants could then "disclose" to third parties contracting with plaintiffs (for business relationships that harmed defendants' interests) that Stovall had committed such *financial* improprieties, regardless of whether the Church tried to remove Stovall as pastor of Celebration Church. Indeed, as set forth below, on the facts alleged in the complaint, any removal was entirely beside the point *since Stovall had already resigned*.

In other words, ecclesiastical abstention does not apply here because the case does not seek damages or reinstatement from Stovall's former Church; it is a garden variety civil claim.

Moreover, even if ecclesiastical abstention might be somewhat implicated, the district court still should have denied the motion to dismiss. The allegations and alleged findings in the Report are based on civil attorneys' assessment of

Florida statutes.  The case can be decided on neutral principles of law, and thus does not require abstention under applicable precedent.

This Court should reverse and remand the case to the district court.  To the extent that the defendants then want the district court to consider their alternative grounds for dismissal only of claims asserted by plaintiffs NorthStream and the Weems Group, the district court should do so, not this Court.

## VII.  ARGUMENT

### A.  Standard of Review

Where a defendant makes a facial attack, on the court's subject matter jurisdiction (Fed.R.Civ.P. 12(b)(1)), the Court undertakes a *de novo* review, taking the well-pleaded factual allegations in the complaint as true. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990); *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016); *Garcia v. Church of Scientology Flag Serv. Org., Inc*., No. 18-13452, 2021 WL 5074465, at *4 (11th Cir. Nov. 2, 2021).

### B.  The district court erred in finding that ecclesiastical abstention barred the first amended complaint.

#### 1.  The ecclesiastical abstention doctrine is not unlimited, and is generally limited to intra- not extra-church disputes.

Ecclesiastical abstention arises from the First Amendment's Free Exercise and Establishment clauses.  *Crowder v. Southern Baptist Convention*, 828 F.2d 718, 721 (11th Cir. 1987).  However, the doctrine requires courts to balance the rights of litigants to adjudicate their rights in a civil forum as well. (*Id*. at p. 725,

digesting authorities including *Jones v. Wolf*, 443 U.S. 595, 602 (1972).) A rule of unlimited compulsory deference to religious bodies does not exist. (*Ibid.*)

For this reason, the Florida Supreme Court, relying on United States Supreme Court precedent, has held that the ecclesiastical abstention applies to intrachurch disputes. Other courts have taken the same position: claims between church members or church factions are distinguishable from disputes between churches and third parties, and the latter are not subject to ecclesiastical abstention. *Malicki v. Doe*, 814 So.2d 347, 356 (Fla. 2002). This case is even more removed. The parties on each side of the case are none of them members of the same Church. This principle applies all-the-more-so in this circumstance.

As the *Malicki* court recognized, United States jurisprudence has never suggested that extra (as opposed to intra) church disputes are the subject of ecclesiastical abstention: "this Court has ***never suggested*** that those [ecclesiastical abstention] constraints similarly apply ***outside*** the context of . . . intraorganizational disputes." *Id.* at 356-367 (emphasis added), citing *General Council on Fin. & Admin. v. California Superior Court*, 439 U.S. 1355, 1372–73 (1978).

The United States Supreme Court's decision in *General Council* arose as a stay pending the Supreme Court's determination of a petition for certiorari. However the procedural context makes no difference because Justice Rehnquist explicitly decided this issue. The case arose out of the collapse of Pacific Homes

-28-

Corporation. The plaintiffs filed a class action seeking damages for breach of contract, fraud and violations of securities laws arising out of the collapse. Class members also alleged that the United Methodist Church and its affiliates were Pacific Homes' alter egos (thereby implicating a Church). 493 U.S. at 1369-1370. When the California courts denied the Church's motion to quash unsuccessfully asserting, in part, ecclesiastical abstention, the church sought review in the Supreme Court and concurrently sought a stay.

The Supreme Court (by Justice Rehnquist) denied the stay, rejecting the abstention argument: In my view, applicant "is wrong" (for the reasons relied upon above in *Malicki*. *Id.* at 1372-1373. Again: "this Court has never suggested that those [ecclesiastical abstention] constraints similarly apply outside the context of . . . intraorganizational disputes." *Id.* at 1372.

Thus, in *St. Brendan High Sch., Inc. v. Neff*, 283 So.3d 399 (Fla. Dist.Ct.App. 2019), the Florida district court held that ecclesiastical abstention did not preclude civil adjudication of parents' suit for personal injury, breach of contract and intentional infliction of emotional distress against a parochial school because the claims were more secular and contractual in nature than they were ecclesiastical. Plaintiffs' daughter was injured while she was performing community service at an approved organization on the school's community service list. When plaintiffs sued the school for damages, the school expelled the daughter. *Id.* at 401.

-29-

The lower court allowed the claims to proceed, and the appellate court affirmed (on an extraordinary writ). *St. Brendan* held that under Supreme Court precedent, a court must determine whether a dispute is about discipline, faith or internal organization, or whether it may proceed to adjudicate the matter for secular disputes between third parties and a particular defendant, albeit a religiously affiliated organization. *Id*. at 402. The plaintiffs' claim fell on the secular/contractual side of the divide. *Id*. at 401-402.

> **2.    Claims relating to wrongful conduct occurring after a member/pastor's withdrawal from a church do not fall within ecclesiastical abstention.**

Courts also recognize that in claims between former members and the churches they left, members may even sue their former church in tort <u>for statements or conduct made after the member had left the church</u>. Where a statement has long been recognized as defamatory outside the context of any religious doctrine or practice, the claim can be adjudicated without implicating church autonomy. *Bilbrey v. Myers*, 91 So.3d 887, 891–92 (Fla.Dist.Ct.App. 2012). Here, the first amended complaint alleges that the Report (which defendants helped instigate and then used to spread statements that Stovall had engaged in financial improprieties) came out after Stovall resigned when it was no longer necessary to remove him.

Other courts take the same view: *Gorman v. Swaggart*, 524 So.2d 915, 992 (La.Ct.App. 1988) (church members and ministers may be sued for defamation and

other torts for conduct following a minister's or members withdrawal from the church);[6] *Guinn v. Church of Christ of Collinsville*, 1989 OK 8, 775 P.2d 766 (1989)(congregant's personal injury action for invasion of privacy and intentional infliction of emotional distress against church for defamatory statements made after she had withdrew from the church could proceed); *See also*, *Oklahoma Ann. Conf. of the United Methodist Church, Inc. v. Timmons*, 2023 OK 101, ¶ 2, 538 P.3d 163, 165 (OK 2023)(affirming this principle and clarifying the under Oakland law, ecclesiastical abstention is jurisdictional, and not an affirmative defense).

*Auguste v. Hyacinthe*, 346 So.3d 67 (Fla.Dist.Ct.App. 2022) likewise reversed in part a lower court order that dismissed claims *even between two church factions* alleging claims for breach of Florida's statute relating to not-for-profit corporations and for conversion. *Id*. at 71-73. The court recognized the general principle that "'[t]he scope of the [ecclesiastical abstention] doctrine is not unlimited." *Flynn v. Estevez*, 221 So. 3d 1241, 1247 (Fla. 1st DCA 2017)." *Auguste*, 346 So.3d at 71 (digesting cases).  Where a case may be decided on neutral principles, ecclesiastical abstention is not appropriate. *Id.*  Thus, all the *claims under Florida statutes could proceed because they raised issues regarding*

---

[6] *Sonnier v. Roman Cath. Diocese of Lafayette*, No. 6:16-CV-1229, 2017 WL 778153, at *5 (W.D.La. Jan. 18, 2017), report and recommendation adopted, No. 6:16-CV-1229, 2017 WL 778003 (W.D.La. Feb. 24, 2017) (acknowledging the rule stated in *Gorman*, but distinguishing the case because the *Sonnier* plaintiff did not allege post withdrawal/termination statements).

*the propriety of the church's actions under Florida statutes*. *Auguste*, 346 So.3d at 72-73. The church did not have exclusive authority to interpret Florida laws. The same is true here.

### 3. Even where a lawsuit might conceivably intrude on church autonomy, the case may proceed if the courts can apply neutral principles of law to the dispute.

Civil courts may apply neutral principles of law to decide church disputes that do not involve doctrinal matters. *Myrhe v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 F.App'x 926, 928-29 (11th Cir. 2008)(in a Georgia case, the Court recognized this limitation; however the court found it did not apply because plaintiff admitted that he was defrocked over a theological disagreement, and his claims turned on the meaning of what constituted a member of good standing under denominational rules).[7]

The case law relied the district court (and defendants) relied on – with but one exception – all addressed disputes between church members and/or pastors and their church before the member's/pastor's withdrawal or termination. Some of even that subset of cases involved partial reversal of a lower court's exercise of ecclesiastical abstention. This demonstrates that ecclesiastical abstention is not a talismanic get out of jail free card, even in intra- rather than extra-church disputes.

---

[7] *Id*. at 928. This is because Myhre's claims for retirement benefits depended on whether he was a "member in good standing." *Id*. at 929.

BN 91488460v3

This is true of *Crowder*,[8] *Myhre*,[9] *Milivojevich*,[10] *Rutland*,[11] *Eglise*,[12] and

*Goodman,*[13] discussed in the district court's order. (2-APP-369-375: ECF 58)  It is

---

[8]  828 F.2d 718.

[9] 719 F.App'x 928 (on its facts <u>a dispute between a minister and his church</u> claiming that he had been improperly defrocked for theological reasons and that he remained a "member in good standing" of the church entitled to retirement benefits despite the defrocking; the case required interpretation of the church's definition of what constitutes a member in good standing under church law; it sought damages from the Church).

[10] *Orthodox Diocese for U.S. of Am & Canada v. Milvojevich*, 426 U.S. 696, 723 (1976)(dispute between a bishop and his church over what he contended were wrongful actions of the church.)

Recall, any overbroad reading of this case was limited in *General Council*, 439 U.S. at 1372-1373.  The case was also limited by *Jones v. Wolf*, 443, U.S. 595 (1979) decided three years later.  *Milvojevich* suggested that all church property disputes are subject to ecclesiastical abstention. (426 U.S. at 709.)  *Jones* rejects absolutism, holding that civil courts may adjudicate disputes over property and disputes that involve neutral principles of law. 443 U.S. at 602.

[11] *Rutland v. Nelson*, 857 F.App'x 627 (11th Cir. 2021)(pro se civil rights <u>complaint by church member against his church</u> for disciplining him).

[12] *Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Fla*., 824 F.App'x 680 (11th Cir. 2020)(the case, bereft of any facts, simply concludes that a dispute *between church members and a pastor's widow who claimed leadership of the church* involved religious disputes not appropriate for civil determination).

[13] *Goodman v. Temple Shir Ami, Inc*., 712 So.2d 775 (Fla.Dist.Ct.App. 1998)(dispute <u>between rabbi, on the one hand, and Temple and board member, on the other,</u> in which rabbi sued (a)Temple for breach of contract and defamation and (b) a board member for defamation and interference with his church contract and defamation).  The trial court granted the motion to dismiss, and the appellate court *partially reversed*.  The court held that in a dispute concerning the Temple's termination of the rabbi, the rabbi could not sue the Temple or the board member for defamation or for interference because that would involve questions of church polity; but its claim for breach of contract for sums due and not paid during his tenure would proceed.  The court could decide whether he was paid for the time that he worked without excessive entanglement with religion.

BN 91488460v3

true of the other additional cases cited by defendants in their motion: see, e.g., *Napolitano*,[14] and *Hutchinson*.[15]

The only case that does not involve an intrachurch dispute —*Mammon v. SCI Funeral Servs. of Fla. Inc.*, 193 So.3d 980, 982 (Fla.Dist.Ct.App. 2016) — is one between a devout Jew that contracted with what she believed to be a Jewish cemetery to bury a her husband. She sued the cemetery for deceptive practices claiming that the cemetery represented its burials were in accordance with Jewish laws and customs. The basis of her claim: Jewish law required that Jews be buried in consecrated ground exclusively used to bury those of that faith, and she discovered that non-Jews were also buried in the same part of the cemetery. *Id*. at 981-982. The cemetery brought an evidentiary motion to dismiss based on ecclesiastical abstention (not a facial challenge as here). *Id*. at 983. This included the widow's deposition testimony in which she stated that she was relying on the law handed down by Moses with the Ten Commandments, the law of Abraham and the Old Testament, but she then conceded that she did not have specifics and

---

[14] *Napolitano v. St. Joseph Cath. Church*, 308 So.3d 274, 275, 277 (Fla.Dist.Ct.App., 2020)(former church employee brought action against the church for breach of contract; issue was whether under canon law, the pastor had the authority to enter into a long term contract with the employee).

[15] *Hutchison v. Thomas*, 789 F.2d 392, 396 (6th Cir. 1986)(suit by ordained minister against his church challenging his enforced retirement). Likewise *McClure v. Salvation Army*, 460 F.2d 553 (5th Cir. 1972) involved suit by a minister against Salvation Army (a religious corporatation) challenging her termination.

*defendants should ask a rabbi*. *Mammon*, 193 So.3d at 983. It included theological papers written by rabbis within the rabbinical community *showing a theological debate existed regarding whether Jews and non-Jews may be buried in the same cemetery*. *Id*. at 893. The widow's counsel argued at the motion to dismiss hearing that *the court would be presented with experts on Jewish law, and it would be up to the trier of fact to determine what canon law was*. *Id*. at 984.

Recognizing that the First Amendment is not violated every time a case requires a court to examine church law or policies, the court held that ecclesiastical abstention was required on *Mammon*'s facts because both parties conceded that the court would have to decide a dispute over Jewish cannon law. *Id*. at 985. This case has no application here, as discussed more fully below.

### 4.  The district court erred in applying the above principles.

The district court agreed that this action did not involve an intrachurch dispute. The plaintiffs and the defendants were not members of the same church. And Celebration Church is not a party to the action. (2-APP-374: ECF 58, p. 11.) There is no dispute about those facts.

These findings demonstrate that the matter does not involve Celebration Church's governance. The action does not seek Stovall's reinstatement. It does not seek damages from the Church. Thus, there is no reason to abstain on ecclesiastical grounds. The district court is fully able to determine whether alleged financial improprieties occurred under general Florida law. See e.g. *Favalora v.*

-35-

*Sidaway*, 995 So.2d 1133, 1134 (Fla.Dist.Ct.App. 2008)(affirming lower court order denying motion to dismiss on ecclesiastical abstention grounds; complaint alleged that the Archdiocese fraudulently induced settlement of prior litigation by promising to implement reforms he never intended and which could not be enforced). As in *Favalora*, there is no "excessive entanglement" here. "[N]either the First Amendment, nor the religious autonomy principle, bars consideration" of findings based on violations of Florida Statures § 617.0834(1).[16] *Id*. at 1134.

The facts alleged show that defendants orchestrated a sham investigation to find that Stovall engaged in financial improprieties – provable or not under Florida general laws, ***not*** under church canons. Ecclesiastical abstention is simply inapposite in light of the foregoing.

Defendants, and the district court apparently believed that the Church may have acted on other grounds; but even if true, reversal is still mandated.

Again, the claims are not between Stovall and the Church. They do not seek reinstatement or damages against the Church. The facts show that the defendants conspired to create a sham investigation about *financial* improprieties, not something else. Indeed, it was the manufactured financial improprieties that they relied on to communicate with other third parties to interfere with plaintiffs' business relationships. (See Section IV.A, *ante*.) Hence it did not matter whether

---

[16] (1-APP-21: ECF 1-1, p. 6/23.)

BN 91488460v3

or if Celebration Church ultimately removed Stovall. Indeed, it was not even necessary to remove him as he had already resigned.

Where a party enters into financial relationships with others, the whiff of financial improprieties may queer the deal. Thus, even if the Church had disagreements with Stovall over theological issues, it matters not at all. The questions to be asked have to do with the financial impropriety findings, based on general legal principles:

Did Stovall and Kerri sell property to the Church? Did they sell it to the Church for more than it was worth? Did Stovall make (mis)representations to a bank to induce it to advance money under the Church's line of credit?; Were PPP funds used on items and for matters not authorized by that program? Were debts mischaracterized and debts cancelled? (*Cf*. 1-APP-29-36: ECF 1-1, pp. 14-21/23.)

The charges of financial improprieties were the focus of the defendants' conspiracy. (See e.g., 2-APP-303-304, 310: FAC, ¶¶ 78, 80, 81, 98 [defendants manufactured the sham to disseminate charges of financial improprieties].) And it was under Florida laws that the findings were purportedly made. (See e.g., 1-APP-21: ECF 1-1, p. 6/23, referencing Fla. Stat. § 617.0834(1) as the legal baseline for these impropriety findings.) A court can, and in this case the district court should have, retained the case to decide it on general *legal* principles.

BN 91488460v3

**C.** **Following reversal of the district court's order dismissing the action, this Court should reverse wth instructions for the district court to consider, in the first instance, defendants Rule 12(b)(6) challenge to the interference and conspiracy claims by the Weems Group and NorthStream in the first amended complaint, and if having any merit, to determine if leave to amend should be granted.**

When defendants moved to dismiss the plaintiff's original complaint, they sought dismissal for lack of jurisdiction based on ecclesiastical abstention; they further sought a "more definite statement" because the complaint "impermissibly" "grouped all named parties on each side of the case into two over-generalized groups" and only two counts. (1-APP-10: Docket at ECF 28, p. 2, 4)

The first amended complaint separated out counts by plaintiff as the court requested. (See Section IV.A, *ante*; see also 2-APP-312-340: ECF 49.)

Defendants' second motion to dismiss raised a pleading challenge to the counts for conspiracy and interference by the Weems Group and by NorthStream (Counts 10, 11, 12, 13, 14, 15, 19 and 20) under Federal Rule of Civil Procedure 12(b)(6). (2-APP-360-361: ECF 52, p. 1-2/25.) Plaintiffs briefed the issue. (1-APP-12: Docket at ECF 56, pp. 17-20/21.)

However, the district court did not rule on the sufficiency of those counts, finding the issue moot. Nor did it determine whether further amendment would be warranted.

Because the count-specific 12(b)(6) challenge was raised for the first time in response to the first amended complaint, the district court should decide the issue

-38-

in the first instance, including deciding whether (if there is any insufficiency) leave to amend should be granted. In the Eleventh Circuit, the Court does not generally address issues not decided by the district court below. *Baumann v. Savers Fed. Sav. & Loan Ass'n*, 934 F.2d 1506, 1512 (11th Cir. 1991); *Nicholson v. Shafe*, 558 F.3d 1266, 1279 (11th Cir. 2009)(same: reversing for lack of jurisdiction under Rooker-Feldman abstention and declining to decide issues not decided by the district court below); *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1306 (11th Cir. 2022)(where district court did not decide the arguments raised, the appellate court would not do so, but would remand back to the district court).

## VIII.  <u>CONCLUSION</u>

For all the foregoing reasons, this Court should reverse the district court's order, finding that on this facial challenge to the first amended complaint, ecclesiastical abstention does not apply. The Court should then remand for further proceedings.

BN 91488460v3

DATED: July 16, 2025

BUCHALTER

By: _____

JOHN C. CLOUGH

*Attorneys for Plaintiffs and Appellants*
Charles S. Weems, IV, Kerri Weems, Celebration Global, Inc., Honey Lake Farms, Inc., NorthStream Management Group, LLC and Weems Group, LLC

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
## FED.R.APP.P. 32(g)

The undersigned, counsel for plaintiffs and appellants in this appeal, affirms that this document complies with the type-volume limit of Fed.R.App.P 32(a)(7)(b) because, excluding parts of the document exempted by Fed. R. Civ. P. 32(f):

This document contains 7,201 words as measured by Microsoft Office Work 2016 word processing software.

This document complies with the type face requirements of Fed.R.App.P 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using in Times New Roman, fourteen point font using Microsoft Office Work 2016 word processing software.

DATED: July 16, 2025        BUCHALTER

By: _____
        JOHN C. CLOUGH

*Attorneys for Plaintiffs and*
*Appellants*
Charles S. Weems, IV, Kerri
Weems, Celebration Global, Inc.,
Honey Lake Farms, Inc.,
NorthStream Management Group,
LLC and Weems Group, LLC

BN 91488460v3

CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing document entitled

Appellants' Opening Brief. All participants registered CM/ECF users will be

served by the appellate CM/ECF system. All participants non-registered with

CM/ECF system will be served via U.S. Mail. Non-registered participants are:

<table>
<tr><td>John A. Carlisle</td><td>Brian George Kelley</td></tr>
<tr><td>The Liles Firm, PA</td><td>Rogers Towers, PA</td></tr>
<tr><td>50 N. Laura Street, Ste. 1200</td><td>1301 Riverplace Blvd., Ste. 1500</td></tr>
<tr><td>Jacksonville, FL 32202</td><td>Jacksonville, FL 32207</td></tr>
</table>

Edward McCarthy III
Woolsey Morcom, PLLC
203 Fort Wade Road, Ste. 105
Ponte Vedra, FL 32081

I declare under penalty of perjury under the laws of the United States of

America that I am a member of the Bar of this Court making service, and this

certificate is executed on July 16, 2025, at Irvine, California.

By: /s/ John C. Clough

John C. Clough

BN 91488460v3